

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
02/27/2015

| | | |
|---|---|---|
| IN RE: | § | |
| **1002 GEMINI INTERESTS LLC** | § | **CASE NO: 11-38815** |
| Debtor(s) | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

1002 Gemini Interests LLC, filed objections to the fee applications filed by (i) the examiner, Marc Schwartz; (ii) the examiner's accounting firm, Hill Schwartz Spilker Keller LLC ("HSSK"); and (iii) the examiner's counsel, Baker Donelson Bearman Caldwell & Berkowitz, P.C.

Schwartz's final fee application is approved in the amount of $58,892.53 in fees and $56.00 in expenses.  Baker Donelson's final fee application is approved in the amount $41,744.90 in fees and $101.30 in expenses.  HSSK's final fee application is approved in the amount $70,804.68 in fees and $83.12 in expenses.

### Factual Background

On October 17, 2011, 1002 Gemini Interests, LLC filed its chapter 11 case. (ECF No. 1). The 1002 Gemini bankruptcy case was filed shortly after Unlimited Restoration Specialist ("URI") obtained a substantial judgment against Gemini. (ECF No. 317).  One month after the case was filed, URI filed its Motion to Appoint Trustee.  URI urged the Court to appoint a trustee in light of the fact that a jury had found that Gemini's principal, Edward Nwokedi, had committed a series of defalcations with regards to a portion of the insurance proceeds received from damages to Gemini's sole asset in 2008 after Hurricane Ike.  (ECF No. 32).  Instead of appointing a trustee, the Court ordered the appointment of an examiner with expanded powers. (ECF No. 58).

On February 9, 2012, Marc Schwartz was appointed examiner over the 1002 Gemini Interests, LLC bankruptcy case. (ECF No. 64).  The Order appointing Schwartz as examiner states that he has 5 duties: (1) collection of rents from 1002 Gemini; (2) controlling all debtor in possession bank accounts; (3) paying all bills and expenses of 1002 Gemini; (4) performing all accounting functions for 1002 Gemini; and (5) perform those duties set forth in 11 U.S.C. § 1106(b).  (ECF No. 58).

On April 2, 2012, on motion of the examiner, the court entered an amended examiner order.  The amended order did not change the scope of the examiner's duties, but authorized the examiner to employ professionals. (ECF No. 72).

On August 31, 2012, the Court approved the application to employ Adams & Reese, LLP as counsel for Schwartz. (ECF No. 107).  The application to employ designated Susan Matthews as lead counsel. (ECF No. 84).   In March of 2013, Matthews left Adams & Reese and joined Baker Donelson.  On April 29, 2013, the Court approved the substitution of Bakers Donelson as counsel for Schwartz.  (ECF No. 148).

On May 10, 2012, the Court approved the application to employ Hill Schwartz Spilker Keller LLC ("HSSK") as accountants for Schwartz. (ECF No. 80).

On April 11, 2012, Edward Nwokedi filed his own personal chapter 11 case.  Lowell Cage was appointed trustee in that case in May of 2012.

Initially, Schwartz and his professionals were primarily involved in investigating Gemini's financial transactions.  These efforts lead to the discovery that extensive funds had been transferred from Gemini to Ed Nwokedi.  At some point, without an expanded court order, Schwartz and his counsel's role in the case expanded to include filing a proof of claim on behalf of Gemini, working on litigation concerning Cadence Bank, engaging in the plan negotiation

process, and analyzing Nwokedi's personal assets and exemption rights in his individual chapter 11 case.

## Procedural Background

In May of 2014, Schwartz, HSSK, and Baker Donelson each filed their Final Fee Applications (ECF Nos. 270, 271, and 277, respectively).  Gemini objected to each of these applications. (ECF Nos. 286, 287, and 292).   In response, Schwartz filed an amended third application (ECF No. 303) and Baker Donelson Filed an amended second final fee application (ECF No. 309).   Gemini responded by filing objections to each of the amended final fee applications. (ECF Nos. 317 and 318).

The Court held evidentiary hearings on the fee applications on June 30, 2014, July 2, 2014 and August 7, 2014.  Marc Schwartz, Susan Matthews, Ryan Cantrell, and Edward Nwokedi testified at the hearings.  On August 21, 2014, Schwartz filed a post hearing brief in support of the final fee applications for Schwartz and his professionals.  (ECF No. 325).

## Standard for Professional Fees

The Fifth Circuit has held that the lodestar method, the *Johnson* factors and 11 U.S.C. § 330, coalesce to form the framework for arriving at the proper fee amount for estate professionals. *CRG Partners Group, L.L.C. v. Neary (In re Pilgrims Pride Corp.),* 690 F.3d 650, 656 (5th Cir. 2012).

### i) Lodestar Amount

The lodestar amount is found by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. (*Id.* at 655).  In determining the number of hours reasonably expended, the Court must first determine the number of compensable hours.  *In re Skyport Global Commc'ns, Inc.*, 450 B.R. 637, 647 (Bankr. S.D. Tex.

2011).   Time entries that are vague, duplicative, excessive, or fall outside the scope of a professional's appointment authority should be excluded from the Court's consideration of the hours reasonably expended.   (*Id.* at 648) (citing *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997).

**ii) *Johnson* factors**

A bankruptcy court has the discretion to adjust the lodestar amount upwards or downwards in light of its analysis of the *Johnson* factors. *CRG Partners Group, L.L.C. v. Neary (In re Pilgrims Pride Corp.),* 690 F.3d 650, 656 (5th Cir. 2012) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 716 (5th Cir. 1974).   The twelve *Johnson* factors that courts consider in determining reasonableness of fees are: "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases." *Id.*

**iii) 11 U.S.C. § 330**

Section 330(a)(3) of the Bankruptcy Code provides a non-exclusive list of factors that bear on a court's determination of the reasonable compensation for actual, necessary services and expenses rendered by attorneys and other court-supervised bankruptcy professionals. *See* 11 U.S.C. § 330(a)(1)(A).   "[T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3).

### Schwartz's Fee Application

Schwartz is requesting (i) interim and final approval of fees in the amount of $24,196.00 and expenses in the amount of $56.00 for the period of August 1, 2013 through May 6, 2014; and (ii) final approval of fees in the amount of $62,147.53 and expenses in the amount of $56.00 for the period of February 6, 2012 through May 6, 2014.  (ECF No. 303).

Schwartz testified that he charged an hourly rate of $350.00, instead of his normal non-bankruptcy rate of $450.00-$520.00 an hour.   The Court finds that the $350.00 rate is commensurate with the prevailing hourly rate in the community for similar work, and is likely lower than the prevailing rate for an individual with Schwartz' experience and capabilities.

At the June 30, 2014 hearing, Gemini stated that it was not objecting to any of the fees sought in the first and second amended application.  Accordingly, Gemini's objection is limited to the $24,196.00 in fees sought in Examiner's Amended Third and Final Application. (ECF No. 303).  Although Gemini's objections are limited to only the interim fee application filed, the Court has an independent duty to review the entire $62,147.53 in fees sought for final approval

(including fees previously approved in interim applications[1]). *See In re Delgado*, No. 06-30439-H3-13, 2006 WL 3227331, at *3 (Bankr. S.D. Tex. Nov. 2, 2006) ("The bankruptcy court has an independent duty to review fee applications, notwithstanding the absence of objections by the United States trustee, creditors, or any other interested party.").

Schwartz's final interim fee application includes 62 hours of professional fees: 4.5 hours on paying bills; 7.2 hours investigating claims against the estate; 1.6 hours reviewing and signing Monthly Operating Reports (MORs); 4.2 hours on business operations; 4.9 hours on professional fee review and analysis; 2.5 hours on status reports; 4.3 hours on tax compliance; 3.2 hours on Cadence litigation; 11.7 hours on case administration; 1.3 hours on Gemini's plan; and 16.6 hours on Nwokedi's plan. (ECF No. 303-9).

Gemini's objections can be broken down into four categories of work: (i) Schwartz's time spent defending his professionals' previous fee applications; (ii) duplicate time entries; (iii) services performed that were outside the scope of the Examiner's duties; and (iv) inefficient time spent on various categories.

***Objection 1***: ***Fees Defending Other Professionals' Fee Applications***

Gemini asserts that Schwartz's 5.80 hours of time spent on "professional fee review and analysis" should be disallowed under *In re Asarco* because it refers to fees incurred for defending his professional's fee applications. (ECF No. 318 at 1). The Court disagrees.

In *In re Asarco*, the Fifth Circuit held that "[s]ection 330(a) does not authorize compensation for the costs counsel or professionals bear to defend their fee applications." *In re Asarco, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014). The Fifth Circuit reasoned that fees for the defense of a fee application are not reasonably likely to benefit the estate or necessary to case administration. *In re Asarco, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014). The Court reasoned that

---

[1] The Court has approved Examiner's first application (ECF No. 129) and second application (ECF No. 237).

in the absence of explicit statutory guidance, requiring professionals to defend their fee applications is a fair cost of doing business in the bankruptcy context. *Id*. at 301.

In the amended application, Schwartz claims that only 4.9 hours were spent on "professional fee review and analysis." (ECF No. 303-9). This is consistent with the time detail filed with the original application.

The time detail and docket reflects the following sequence of events: Schwartz spent 1.3 hours preparing and reviewing fee applications in August and early September. (ECF No. 303-4 at 1). On September 11, 2013, Gemini objected to HSSK's and Adams & Reese's fee applications. (ECF Nos. 187, 188). In October, Schwartz spent 3.6 hours preparing for and attending a hearing on October 29, 2013. (ECF No. 303-4 at 1). The October 29, 2013 hearing was set to consider interim fee applications filed by Schwartz, HSSK, and Adams & Reese. No party objected to Schwartz's fee application.

The 1.3 hours Schwartz spent in August and September are not fees incurred for defending fees because this work was performed before Gemini filed its objections.

The remaining 3.6 hours relate to work performed in preparation for the October 29, 2013 hearing. The time detail indicates that 1.5 hours was spent "meet[ing] with counsel and prepar[ing] for HSSK, Adams & Reese and WMS [W. Marc Schwartz] Fee App hearings tomorrow;" 1.3 hours was spent to "attend fee application hearing and provide testimony;" and .80 hours was spent "meet[ing] with counsel prior to fee application hearing." (ECF No. 270-3).

Regardless of whether HSSK's fee application was objected to, Schwartz would have attended the hearing to testify for his own uncontested fee application. This Court has already held that counsel is allowed to collect fees incurred for appearing at an uncontested fee

application hearing. *In re Nwokedi*, 2014 WL 4199106 (Bankr. S.D. Tex. 2014). Accordingly, Schwartz's fees incurred for attending the hearing are allowed.

However, most, if not all, of the 2.3 hours spent *preparing* for the hearing was likely devoted to the contested fee applications. The Court finds that these fees are allowed under *In re Asarco*.

One of the primary reasons that the Fifth Circuit disallowed a professional's fees incurred for defending a fee application was because "[t]he primary beneficiary of a professional fee application, of course, is the professional." *In re Asarco, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014). In this case, however, Schwartz was not the primary beneficiary of the contested fee applications.

The Court interprets *In re Asarco* as holding that a professional cannot recover the fees incurred in defending its own fee application. *In re Asarco, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014) ("[s]ection 330(a) does not authorize compensation for the costs counsel or professionals bear to defend *their* fee applications.") (emphasis added). Schwartz's time was spent preparing for and defending the fee applications filed by Adams & Reese and HSSK. HSSK and Adams & Reese performed its services at Schwartz's instruction. When the fee applications were objected to, Schwartz chose to cooperate with his professionals in helping them prepare for the hearing. If Schwartz refused to cooperate in fear that he would not be compensated, then this would create a substantial risk of his professionals refusing to perform services for the examiner in the future. Indeed, an examiner's time spent helping his professionals defend their fee applications may be necessary to ensure that the professionals continue to perform services on behalf of the estate. For these reasons, the Court does not extend the holding in *In re Asarco* to bar an examiner from recovering fees incurred defending his professionals' contested fee applications.

Accordingly, all of Schwartz's fees in the "Professional Fee Review & Analysis" are allowed.

### Objection 2: Duplicate Entries

Gemini also claims that Schwartz has included duplicate time entries of 1.5 hours on February 27, 2014 and February 28, 2014.  Schwartz testified that although the amounts and descriptions are the same, these are not duplicate time entries.  He recalled that this was an active week because it was the week where the URI Court of Appeals decision was issued and the Cadence Bank litigation was settled.  Schwartz and the other professionals had several discussions about the effect that these events could have on the joint plan.  The Court fully credits Schwartz's testimony on this matter.  Accordingly, there are no duplicative entries.

### Objection 3: Hours Expended Outside the Scope of Examiner's Authority

Gemini argues that certain fees included in the final fee application fall outside the scope of an examiner's duties.  A professional may only receive compensation under § 330 for services that are performed within the scope of the professional's appointment under § 327.  *See, e.g. In re Engel*, 124 F.3d 567, 590 (3d Cir. 1997) ("In the rare situation where special counsel is authorized under § 327(e), and counsel then engages in a course of representation or conduct that is beyond the scope of his or her authorization, that subsection would also operate to limit or prevent compensation from the estate.").

Generally, an examiner's duties are limited to overseeing a narrow aspect of the bankruptcy case.  However, in this case, the Order appointing Schwartz as examiner granted him a broad scope of duties.  The Order provided Schwartz with 5 duties. (ECF No. 58).  The first four listed duties define the examiner's specific role in the case.  The first three duties refer to the daily management of 1002 Gemini: collect the rents, control the debtor in possession bank

accounts, and pay the bills.  The fourth duty refers to its accounting functions.  The fifth duty is a catch all that states "perform those duties set forth in 11 U.S.C. § 1106(b), including, but not limited to filing a report or reports with this Court."  (ECF No. 58 at 1).  Accordingly, the general authority in the fifth duty should be interpreted within the context of the four previously listed specific duties.

Section 1106(b) states that an Examiner shall perform the duties of a trustee specified in paragraphs (3) and (4) of section (a) of this section.

Section 1106(a) (3) and (4) provide:

(3) except to the extent that the court orders otherwise, **investigate** the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fat ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; . . . .

11 U.S.C. §1106(a)(3) and (4) (emphasis added).

Section 1106 is not intended to give an examiner the same duties and responsibilities as a trustee.  While the trustee is responsible for administering the estate, an examiner's duties are primarily investigative. *See In re Int'l Distribution Centers, Inc.*, 74 B.R. 221, 224 (S.D.N.Y. 1987) ("[t]he legislative history of subsection 1106(b) shows that Congress envisioned distinct roles for the trustee and the examiner. As opposed to a trustee's accountability for administration of the estate, an examiner's duties are primarily investigative.") (citing H.Rep. No. 595, 95th Cong., 2d Sess. 402–04 (1977)).

The examiner now seeks to be compensated for services that exceed the investigatory scope of an examiner's duties, and that exceed the additional duties assigned to him in the appointment order.

In determining which of Schwartz's hours are within the scope of his appointment and thus compensable, the Court relied on the following documents: (i) "Examiner- Time Detail" (ECF No. 303-4); (ii) "Examiner Time Categorized by Activity" (ECF No. 303-9); (iii) "Baker Donelson and Examiner Timesheet Comparison."

For the scope objection, the Court is concerned with three categories: (i) the 17.9 hours spent on Gemini's and Nwokedi's plans; (ii) 3.2 hours on the Cadence Bank litigation; and (iii) time spent on the proof of claim brought against the Nwokedi estate.

### Examiner's Work on the Joint Plan

Schwartz argues that all of his time spent on the joint plan falls within his duty to investigate "the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1106(a)(3). The Court disagrees.

Schwartz testified that he and his counsel became involved in the plan process in November of 2012 at the request of Rogers and counsel for Lowell Cage. Schwartz and his counsel also reviewed a plan filed by Ms. Rogers in June of 2013. Schwartz's fees for his limited involvement in the Debtor's plan through July 31, 2013 were approved without objection from Gemini. (ECF No. 237).

It was not until Joshua Wolfshol was retained as counsel for Nwokedi in August of 2013 that the parties began meaningful discussions regarding a joint plan of reorganization. The first joint plan was circulated in late December of 2013.

Schwartz testified that he identified several issues with the joint plan filed in December of 2013. Schwartz discovered that the plan (i) did not provide for any discussion or resolution of the Cadence Bank litigation; and (ii) did not take into account the fact that the Gemini loan and the Broadway loan were going to mature in the fourth quarter of 2014 so that a total of $2.5 million would be due. Schwartz's time spent discovering these issues and communicating them to the professionals who were employed to resolve them (i.e. Rogers and Wolfshol) falls within the investigatory scope of his duties.

In early January of 2013, Schwartz's role expanded to negotiating terms, resolving disputes, formulating refinancing alternatives, and revising terms in the joint plan. At this point, Schwartz's work left the investigatory scope of his duties and moved into the plan proposal arena.

At the end of February, Schwartz and Matthews appeared to be working to resolve the issue of how the plan would provide payment for administrative expenses. The table below provides a description for each excluded hour that Schwartz's spent on the joint plan.

| Date | Description of Schwartz's Work on Joint Plan | Hours |
|------|----------------------------------------------|-------|
| 1/2/2014 | Meet with counsel to discuss possible resolutions to plan issues | 0.3 |
| 1/13/2014 | Meet with counsel to discuss status, need to sell building if it cant be refinanced | 0.2 |
| 1/27/2014 | Read Court of Appeals Decision | 1 |
| 1/29/2014 | Call w/ counsel on implications of Court of Appeals decision | 0.3 |
| 1/31/2014 | two calls with counsel to discuss plan issues and filing in response to plan | 1 |
| 2/3/2014 | Meet with J Wolfshol, B Rogers following conference to discuss plan resolution issues | 0.7 |
| 2/3/2014 | Meet with URI counsel to discuss possilbe ways of resolving funding plan | 0.5 |
| 2/27/2014 | conference call w/ Wolfshol and Matthews on plan | 1.3 |
| 2/27/2014 | follow up call w/ matthews to discuss common admin fee fund suggests by wolfshol | 0.2 |
| 2/27/2014 | Calls w/ Matthews and Wolfshol | 0.8 |
| 2/28/2014 | Calls w/ Matthews and Wolfshol on changes to plan | 1.1 |
| | **Total** | **7.4** |
| | **Hourly Rate** | **$350.00** |

**Disallowed Fees    $2,590.00**

As shown above, 7.4 hours of Schwartz's time on the joint plan exceeded the scope of his duties.  Accordingly, these 7.4 hours are excluded from determining the lodestar amount.

### Cadence Bank Litigation

In October of 2013, Gemini sued Cadence Bank seeking reimbursement of approximately $275,000.00 in fraudulent transfers. (ECF No. 204).  Gemini and Cadence Bank ultimately settled for $100,000.00.  Schwartz and Matthews were actively involved in prosecuting this avoidance action.

Schwartz's final fee application includes 3.2 hours of work spent on the Cadence Bank litigation.  A portion of Schwartz's work on the Cadence Bank litigation exceeded the "investigatory" scope of Schwartz's duties.  The Order Appointing Examiner and Defining Scope of Examiner's Duties makes no mention of investigating, much less prosecuting, a lawsuit on behalf of 1002 Gemini.  Schwartz argues that all of it work on the lawsuit falls under the duties set forth under § 1106 (a)(3).  This subsection states that an examiner shall "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor…" § 1106(a)(3).

The time detail indicates that on October 1, 2013, Schwartz met with his counsel to ensure that the Cadence Bank avoidance action would be pursued and timely filed.  On October 14, 2013, Schwartz billed for time he spent discussing the Cadence Bank claim with his counsel and debtor's counsel.  These initial meetings and conference calls fall within the examiner's duty to investigate the assets of the debtor.  The last three entries on the table below appear to relate to discussions with Rogers about litigation strategy and efforts towards negotiating a settlement with Cadence Bank.  This type of work exceeded the scope of Schwartz's investigatory duties under § 1106 (a)(3).

The table below provides the detailed time entries for Schwartz's work on the Cadence Bank litigation. The shaded entries fall within the investigatory nature.  The remaining entries relate to prosecuting the lawsuit and are thus disallowed.

| Date | Description of Schwartz's Work on Cadence Litigation | Hours |
|------|------------------------------------------------------|-------|
| 10/1/2013 | Meet with counsel to preserve Cadence claim | 0.5 |
| 10/14/2013 | Call with counsel | 0.1 |
| 10/14/2013 | Call with counsel and B Rogers, debtors counsel | 0.7 |
| 10/16/2013 | Call with counsel concering regarding Cadence and 8121 Broadway | 0.2 |
| 1/27/2014 | Read court of Appeals decision | 1 |
| 2/10/2014 | Call w/ S Matthews on Cadence proposal discussions | 0.7 |
| | **Total** | **3.2** |
| | **Allowed** | **1.3** |
| | **Disallowed** | **1.9** |

As shown above, 1.9 out of the 3.2 hours exceeded the scope of Schwartz's duties. Accordingly, these 1.9 hours are excluded from determining the lodestar amount.

### Proof of Claim Filed Against the Nwokedi Estate

Schwartz filed a proof of claim on behalf of 1002 Gemini in the Nwokedi case. Schwartz's services for this work were included in his first fee application.  At the hearing, the Court expressed concern over whether Schwartz's filing of the proof of claim was within the scope of the examiner's duties.

The Court previously held that the preparation of the proof of claim was within the scope of Schwartz's duties as examiner. (ECF No. 164 at 5) ("The court finds that the only service in this category which were necessary to the administration of this case, beneficial to the bankruptcy estate in this case, and within the scope of the examiner's duties, was the preparation of a proof of claim.").  The Court will not upset the previous approval of Schwartz's fees charged for preparing the proof of claim.  Schwartz's final fee application does not include any fees for filing a proof of claim.

*Objection 4: Inefficiency*

Gemini's inefficiency objection is directed at Schwartz's time spent on "inordinate amount of time in reviewing pleadings, preparing monthly operating reports and participating in meetings with his counsel and with Ryan Cantrell…" (ECF No. 318 at 2).   However, based on the Court's review of Schwartz's hourly break down, Schwartz only spent 1.6 hours on reviewing and filing Monthly Operating Reports (MORs) and 2.5 hours meeting with Ryan Cantrell.   The Court rejects the contention that fees should be reduced due to inefficient time spent in these categories.

### Schwartz's Lodestar Amount

In calculating the lodestar amount the Court has excluded (i) 7.4 hours of work on the joint plan and (ii) 1.9 hours of work on the Cadence Bank litigation.   As shown by the table below, Schwartz's interim fees total $20,731.00 and $56.00 in expenses for the period of August 1, 2013 through May 6, 2014.   The total lodestar amount totals $58,892.53.

| | |
|---|---|
| Total Interim Fees Requested | $24,196.00 |
| Disallowed fees for work on plan | $2,590.00 |
| Disallowed fees for Cadence litigation | $665.00 |
| **Interim Fees Allowed** | **$20,941.00** |
| Total Amount Awarded in Prior Applications | $37,951.53 |
| **Lodestar Amount** | **$58,892.53** |

### Baker Donelson's Fee Application

Baker Donelson is requesting (i) interim and final approval of fees in the amount of $39,574.50 for the period of October 1, 2013 through April 21, 2014, and (ii) final approval of fees in the amount of $55,568.40 for the period of March 25, 2013 through April 21, 2014. (ECF No. 309).

Susan Matthews charged an hourly rate of $410.00 for this engagement.  Her standard hourly rate for 2013 was $430.00 per hour and her standard hourly rate for 2014 was $460.00. (ECF No. 309 at 5).

The Court finds that Matthews' rate is commensurate with the prevailing hourly rate in the community for similar work.

Gemini raises two bases for objections: (i) unreasonable amount of time spent on the preparation of fee applications; and (ii) several categories of work exceeded the scope of Baker Donelson's appointment authority.

### *Objection 1: Preparation of Fee Applications*

Baker Donelson billed 10.9 hours on the "fee applications" category for a total of $3,309.00. (ECF No. 309 at 6).  For this category, Matthews spent a total of 6.3 hours (at her $410.00 hourly rate) and her paralegal spent 4.6 hours (at an hourly rate of $140.00).

Matthews' spent 5.3 hours preparing for and attending the October 29, 2013 hearing on Schwartz's and HSSK's fee applications.  Gemini objected to HSSK's fee application, but not to Schwartz's fee application.  For the same reasons discussed above, these fees are not disallowed based on the holding in *In re Asarco*.

Gemini argues that these fees should be disallowed because it was unreasonable for Matthews to spend this much time on fee applications.  The Court disagrees.  The break down indicates that Matthews spent a total of 5.3 hours to prepare for and attend the hearing on Schwartz's fee application (seeking $19,197.50) (ECF No. 180) and HSSK's fee application (seeking $30,107.00) (ECF No. 182).  HSSK's application was contested by Gemini.  Moreover, Matthews has already cut 6.6 hours of time she spent on this category in early October of 2013.

(ECF No. 309-4 at 9).   Accordingly, the entire $3,309.00 amount sought in this category is allowed.

***Objection 2: Hours Expended Outside the Scope of Appointment Authority***

Gemini asserts that Baker Donelson performed work that exceeded the scope of its appointment authority in four categories: (i) the plan and disclosure statement; (ii) the Cadence Bank litigation; and (iii) investigating Mr. Nwokedi's right to exempt his homestead; and (iv) "Assets and Liabilities."

The Order employing Susan Matthews as Counsel for the Examiner was for the purpose of advising and assisting Schwartz in fulfilling his 5 listed duties. (ECF No. 84).   Accordingly, Baker Donelson's scope of appointment is limited by the order appointing Schwartz as examiner.

Baker Donelson asserts that all of its work on the plan was in fulfillment of the examiner's duty under section 1106(a)(3) to investigate "the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." (ECF No. 325 at 6).

**Work on Plan and Disclosure Statement**

Baker Donelson spent 39.0 hours (or $15,909.00 of work) on the plan and disclosure statement.

Gemini acknowledges that a portion of this work should be allowed: "Debtor does not suggest that Mr. [sic] Mathews should not be paid for her contribution to the plan and disclosure statement, but, rather that she be compensated with regard to her position in the case as counsel for the examiner rather than as counsel for the Debtor or even a creditor or creditors' committee." (ECF No. 317 at 4).

The fee applicant bears the burden of proof in a fee application case. *Matter of Evangeline Ref. Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989). "The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney or trustee who has not done so himself." *Matter of Evangeline Ref. Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989).

Because Matthews was employed by the examiner, her level of involvement in the plan process mirrors Schwartz's involvement. Schwartz and Matthews testified that they identified a few issues with the joint plan that was filed in December of 2013. At this point in time, Schwartz and Matthews became actively involved in plan negotiations and formulating refinancing alternatives during January and February of 2014.

After January 1, 2014, only a portion of Baker Donelson's hours spent on the joint plan fall within the "investigatory scope" of an examiner's duties.

To determine which exceeded the scope, the Court relied on the following documents: (i) Baker Donelson's "Itemized Fees" breakdown (ECF No. 309-3); (ii) Baker Donelson's breakdown by category (ECF No. 309-4); (iii) the "Baker Donelson and Examiner Timesheet Comparison" (ECF No. 303-10); and (iv) the corresponding time entries in Schwartz's time detail (ECF No. 303-4). However, certain time entries were too vague for the Court to determine, with certainty, whether the services rose to the impermissible level of plan negotiations or revisions. Accordingly, the Court disallows Baker Donelson's fees for these ambiguous entries.

The table below provides a summary of the disallowed fees for Baker Donelson's time spent on the joint plan.

| Date | Description of BD's Work on Joint Plan | Hrs |
|---|---|---|
| 1/2/2014 | meeting with Schwartz re: issues related to proposed disclosure statement and plan | 0.4 |
| 1/3/2014 | work on the restructuring of the Gemini loan | 1 |
| 1/7/2014 | Review and analyze Schwartz's comments to draft joint plan of reorganzation | 1 |
| 1/23/2014 | Conf. w/ Cantrell re: appellate decision & effect on plan; email re: same to Schwartz | 0.6 |
| 1/24/2014 | Correspondence w/ Wolfshol & Schwartz re: court of appeals decision & refinancing | 1.5 |
| 1/27/2014 | review court of appeals decision and effect on joint plan; email re: same to Schwartz | 1.6 |
| 1/29/2014 | Telephone conference w/ Cantrell re: court of appeals decision and effect on plan | 0.8 |
| 1/31/2014 | Review court of appeals decision & conferences re: refinanicng Nwokedi loans | 1.1 |
| 2/3/2014 | Prepare for meeting and attendance of meeting w/ Schwartz & attorneys | 1.5 |
| 2/4/2014 | Conference call w/ Schwartz, Wolfshol, Rogers & review chart re: refinance | 0.8 |
| 2/21/2014 | Conf. w/ Schwartz on draft amended plan; emails re: same to attorneys | 1 |
| 2/24/2014 | Review comments to draft amended plan; conferences and emails re: same | 1.1 |
| 2/25/2014 | Prepare redline of revised disclosure statement and plan & prepare emails | 1.5 |
| 2/26/2014 | Email correspondence, preparation of draft disclosure statement and plan, & conference | 2.1 |
| 2/27/2014 | Analysis of feasibility of Nwokedi plan; conf. re: feasibility; & draft amended liquidation plan | 1.8 |
| 2/28/2014 | Analyze feasibility of plan; draft objection to disclosure statement; Conf's w/ attorneys | 2.6 |
| | **Total** | **20.4** |
| | **Rate** | **$410.00** |
| | **Disallowed Fees** | **$8,364.00** |

Accordingly, 20.4 hours of Matthews' time spent on the joint plan are excluded from determining the lodestar amount.

### Cadence Bank Litigation

Baker Donelson spent 10.6 hours on the Cadence bank litigation.  This litigation was an avoidance action brought by 1002 Gemini against Cadence Bank.

Gemini admits that Mathews provided valuable information regarding the details surrounding the funds that had been paid to Cadence Bank from the Debtor.  However, Gemini argues that (i) a substantial portion of Matthews' work exceeded the scope of the examiner's duties; and (ii) 10.6 hours was excessive in comparison to the 7.5 hours Gemini's counsel billed for this matter. (ECF No. 317 at 5).

Baker Donelson's work reviewing bank documents, having discussions to determine whether Gemini should pursue the Cadence Bank avoidance claim, and the initial communications with debtor's counsel fall within the scope of the examiner's duties to investigate.  This type of investigatory work is limited to only the first four time entries listed on the time detail. (ECF No. 309-4 at 21).

On October 16, 2013, Gemini filed the lawsuit against Cadence Bank. (ECF No. 204). All of Baker Donelson's work on the Cadence Bank litigation on or after October 16, 2013 exceeded the examiner's duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor…" § 1106(a)(3).  Accordingly, the hours expended after October 14, 2013 are disallowed.

Baker Donelson's involvement in the Cadence Bank lawsuit should have ended after Matthews communicated the results of the investigation to Gemini's counsel.  Instead, Matthews spent hours reviewing the status of the lawsuit, analyzing the merits of the bank's defenses and counterclaims, and participating in settlement negotiations.

In the table below, the shaded entries of Baker Donelson's work fall within the examiner's investigatory scope and are thus allowed.  The remaining entries are disallowed.

| Date | Description of BD Work on Cadence Litigation | Hours | Amount |
|------|-----------------------------------------------|-------|--------|
| 10/7/2013 | Review docs related to claim; telephone conferences re: claim | 1.2 | $492.00 |
| 10/9/2013 | Review docs & report on transfers; conf. w/ Rogers; & email re: claims | 2.5 | $1,025.00 |
| 10/10/2013 | Emails re: limitations deadline | 0.7 | $287.00 |
| 10/14/2013 | Conf's w/ Schwartz, Rogers, & Griffin; emails forwarding documents | 2 | $820.00 |
| 10/16/2013 | Emails to Rogers and Anderson re: status of filing complaint | 1 | $410.00 |
| 10/17/2013 | Review status of filing of amended complaint by Gemini | 0.1 | $41.00 |
| 2/10/2014 | Review URI's complaint for enforcement of constructive trust | 0.2 | $28.00 |
| 2/12/2014 | Review URI's motion to intervene | 0.3 | $123.00 |
| 2/17/2014 | Review and analyze bank's answer and counterclaim and cross-claim | 1 | $410.00 |
| 2/18/2014 | Review and analyze emails re: bank's defenses to suit | 0.3 | $123.00 |
| 2/28/2014 | Review revised language in plan relating to settlement of Cadence | 0.6 | $246.00 |

| 3/3/2014 | Review plan and disc. Statement & terms re: settlement of Cadence | 0.3 | $123.00 |
| 3/19/2014 | Review and prepare email re: hearing on motion to intervene | 0.2 | $82.00 |
| 3/20/2014 | Emails w/ Schwartz & Cantrell re: Gemini & Cadence | 0.2 | $82.00 |
| | **Total** | **10.6** | **$4,292.00** |
| | **Allowed** | **6.4** | **$2,624.00** |
| | **Disallowed** | **4.2** | **$1,668.00** |

Accordingly, 4.2 hours of Baker Donelson's time ($1,668.00 in fees) spent on the Cadence Bank litigation are excluded from determining the lodestar amount.

### Investigating Nwokedi's Assets and Exemption Rights

Towards the end of February of 2014, Baker Donelson spent 9.9 hours investigating Mr. Nwokedi's assets and exemption rights to determine whether there were assets available to satisfy the creditors' claims.   These fees are disallowed.   Matthews had no authority to investigate Nwokedi's personal assets and his ability to utilize the homestead exemption.

The examiner's duties under § 1106 (a)(3) is limited to investigating the "acts, conduct, assets, liabilities, and financial condition of the debtor." § 1106 (a)(3).  Schwartz was appointed examiner in the 1002 Gemini bankruptcy case, not in Nwokedi's case.

Matthews claims that her time spent investigating Nwokedi's assets was to ensure that Nwokedi's plan would provide for the payment of the 1002 Gemini proof of claim.  The 9.9 hours Matthews spent investigating Nwokedi's personal assets cannot be considered within the examiner's duty to investigate Gemini's assets.

In any event, no evidence has been presented to demonstrate that this work provided any benefit to the 1002 Gemini bankruptcy estate.   Matthews testified that her time spent investigating Nwokedi's assets was to determine whether the best interests of the creditors test was satisfied.  However, the joint plan provided for 100% payment to creditors.  Accordingly, Matthews' time spent determining whether the best interest of the creditors test was satisfied was a waste of time.  Matthews responded by pointing out that ensuring that the "best interest of the

creditors" test was important because the plan relied on Nwokedi's speculative future income. Matthews' alleged concerns relate to plan feasibility, not a question of whether the best interests of the creditors test was satisfied.

The 9.9 hours ($3,791.50 in fees[2]) related to the investigation of Nwokedi's assets is disallowed.

### Assets and Liabilities

Gemini argues that this work falls outside the scope of the examiner's appointment authority because this category "appears to have been efforts on the part of Ms. Matthews to locate assets for the benefit of URI in both the case of 1002 Gemini Interests, LLC and Edward Nwokedi." (ECF No. 317 at 6). The evidence does not support this contention.

The examiner has a duty under section 1106(a)(3) to investigate the liabilities of the debtor. The URI claim filed in this case was 1002 Gemini's largest liability.

Matthews testified that this category relates to time she spent analyzing the impact that the Court of Appeals decision affirming the URI judgment would have on the 1002 Gemini bankruptcy case. Accordingly, the $1,845.00 in fees for this category is allowed.

### Baker Donelson's Lodestar Amount

In calculating the lodestar amount the Court has excluded (i) 20.4 hours of work on the joint plan; (ii) 4.2 hours of work on the Cadence Bank litigation; and (iii) 9.9 hours of work investigating Nwokedi's assets. As shown by the table below, Baker Donelson's interim fees total $25,751.00 for the period of October 1, 2013 through April 24, 2014. The total lodestar amount is $41,744.90.

| | |
|---|---|
| Total Interim Fees Requested | $39,574.50 |
| Disallowed fees for work on plan | $8,364.00 |

---

[2] For this category of work, Schwartz enlisted help from two associate attorneys: Courtney Stahl expended 0.1 hours at $215.00 per hour and Jessica Hinkie expended 1.6 hours at $255.00 per hour.

| | |
|---|---|
| Disallowed fees for Cadence litigation | $1,668.00 |
| Disallowed fees for Nwokedi investigation | $3,791.50 |
| **Interim Fees Allowed** | **$25,751.00** |
| Total Amount Awarded in Prior Applications | $15,993.90 |
| **Lodestar Amount** | **$41,744.90** |

### HSSK's Fee Application

HSSK is requesting (i) interim and final approval of fees in the amount of $20,674.00 and expenses in the amount of $83.12 for the period of August 1, 2013 through May 6, 2014, and (ii) final approval of fees in the amount of $72,094.68 and expenses in the amount of $83.12 for the period of May 10, 2012 through May 6, 2014. (ECF No. 271).  HSSK's first and second interim applications were approved.

During the application period, HSSK acted as accountants to Schwartz to provide general and sub ledger accounting, payment of bills, rent reconciliations and rent roll inspections, tax compliance and forensic accounting services.  (ECF No. 271 at 3).  HSSK analyzed activity in the various Debtor bank accounts and has reviewed documentation relating to the disbursement and use of the Debtor's funds.  (ECF No. 271 at 5).

Gemini has raised three objections to HSSK's fee application: (i) an inconsistent entry between HSSK's fee application and Schwartz's fee application; (ii) HSSK's expending of 15 hours a month is excessive; and (iii) the 1,990.00 in fees for preparing the final fee application is excessive and duplicative.

Gemini claims that HSSK's time entries are inconsistent because the "[a]pplicant completed the Monthly Operating Report one day after the Examiner reviewed it in August 2013." (ECF No. 287 at 1).  HSSK's time detail shows that HSSK "completed MOR and sent to attorney" on August 15, 2013. (ECF No. 271-3 at 1).  Schwartz's time detail states "review MOR" on August 14, 2013.  (ECF No. 270-3 at 1).  These time entries are not inconsistent.

As for the second objection, the Court finds that an average of 15 hours a month on professional services is reasonable. Schwartz testified that 1002 Gemini had over 100 transactions each month. Additionally, Schwartz explained that 1002 Gemini's disorganized bookkeeping practices made it much more difficult for HSSK to prepare MORs and track Gemini's prior transaction history. For example, Schwartz discovered that Gemini's bookkeeper had been recording transactions in as many as three separate general ledgers. (ECF No. 271 at 9).

By way of comparison, in HSSK's second interim application, HSSK spent an average of over 23 professional hours a month. (ECF No. 182 at 5). In light of these findings, HSSK's average of 15 hours a month on professional services is not excessive. Accordingly, a reduction for inefficiency is unwarranted.

Finally, Gemini claims that the $2,000.00 (1,990.00 in fees and $10.00 of out of pocket expenses) for preparing the final fee application is excessive. The Court agrees. HSSK spent 22.0 hours preparing this fee application. HSSK spent only 2.0 hours for a total of $700.00 in fees for preparing its second interim application, which sought a total of $30,107.00 in fees. (ECF No. 182 at 3). No explanation for this drastic increase in time spent preparing a fee application was provided. According to the Fee Application Time Detail, HSSK spent 21.2 hours working on the fee application before Gemini even filed its objection.

Even assuming that the additional 20 hours was spent because HSSK anticipated Gemini's objection, then this would constitute unrecoverable fees in defense of its fee application. HSSK may recover $700.00 for this category, the same amount it incurred to prepare its second interim fee application. Accordingly, $1,290.00 is disallowed for this category.

**HSSK's Lodestar Amount**

After excluding the $1,290.00 in disallowed fees for preparing its final fee application, HSSK's interim fees total $19,384.00 and $83.12 in expenses for the period of August 1, 2013 through May 6, 2014.  The total lodestar amount is $70,804.68.

| | |
|---|---|
| Total Interim Fees Requested | $20,674.00 |
| Disallowed fees for preparing fee application | $1,290.00 |
| **Interim Fees Allowed** | **$19,384.00** |
| Total Amount Awarded in Prior Applications | $51,420.68 |
| **Lodestar Amount** | **$70,804.68** |

## Adjusting the Lodestar Amount

Section 330 provides that a bankruptcy court, in its discretion, determines "the amount of reasonable compensation" for professionals retained under section 327 of the Bankruptcy Code. 11 U.S.C. § 330.  Bankruptcy courts have "considerable discretion" when determining whether an upward or downward adjustment of the lodestar is warranted. *In re Pilgrim's Pride Corp.,* 690 F.3d 650, 656 (5th Cir. 2012).

In applying each of the twelve *Johnson* factors, the Court recognizes that some of the factors may have been subsumed in its calculation of each fee applicant's lodestar amount.  For example, the Court has already reduced fees where each professional exceeded the scope of the examiner's authority.  Accordingly, the Court will not adjust the lodestar amount based on further consideration of this issue.  *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("The lodestar may not be adjusted due to a *Johnson* factor ... if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

The Fifth Circuit had held that "[t]he most important factor is the 'degree of success obtained.'" *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir.2003) (citing *Romaguera v. Gegenheimer,* 162 F.3d 893, 896 (5th Cir.1998)).  Accordingly, the Court will consider the

degree of success obtained by Schwartz and his professionals compared to the totality of the fees charged.

At first glance, Schwartz and his professionals' combined lodestar amount of $171,442.11 seems excessive when considering an examiner's typical role in a bankruptcy case of this magnitude.

However, the examiner's role in this case was atypical.   The evidence shows that Schwartz and his professionals provided the following benefits to the estate: (i) they were responsible for acquiring Gemini's largest asset, the $1,343,655.11 proof of claim filed against Nwokedi-- According to Matthews' testimony, Gemini's counsel refused to file this proof of claim against Nwokedi; (ii) their combined efforts to investigate the transfers made to Cadence Bank and assistance in litigating the lawsuit ultimately lead to obtaining a $100,000.00 settlement for the estate (ECF No. 261); and (iii) their involvement in the plan process, particularly identifying the issues contained in the December 2013 joint plan, assisted in confirming a joint chapter 11 plan that provides for a 100% payout to all of the unsecured creditors and professionals.   Additionally, Schwartz and HSSK worked together to file monthly operating reports that covered over 100 transactions a month over a two year period.

In light of the results obtained by the examiner's team, the Court finds that an adjustment to the lodestar amount is not appropriate for any of the fee applications.

### Substantial Contribution Claim under Section 503

To the extent that any fees are disallowed under section 330, Schwartz and his professionals alternatively seek compensation based on a substantial contribution theory under section 503 of the Bankruptcy Code.   The Court rejects the applicants' substantial contribution argument.

Schwartz relies on *In re Service Merchandise* to support its substantial contribution claim. *In re Service Merchandise Co., Inc.*, 256 B.R. 738 (Bankr. M.D. Tenn. 1999).  In that case, a bankruptcy court approved the fee applications of the professionals of the official unsecured creditors' committee which were incurred prior to the formation of the official committee based upon the nunc pro tunc provisions of the retention orders.  Although the bankruptcy court approved the fees under section 330, in dicta, the court noted that the fees should also be approved based upon the substantial contribution provisions of section 503(b)(3).

However, several Circuit Courts have held that a professional cannot circumvent section 327 by arguing that they should be paid under 503(b). *See, e.g.*, *In re Milwaukee Engraving* 219 F.3d 635 (7th Cir. 2000).  In *In re Milwaukee*, a law firm sought to be retained under section 327, but retention was ultimately denied because the firm did not meet the requirement of being disinterested. *See In the Matter of Milwaukee Engraving Company, Inc.,* 219 F.3 635 (7th Cir. 2000).  The firm sought payment for the professional services it rendered between commencement of the case and the Court's decision to deny approval under section 327.  The Seventh Circuit rejected the law firm's argument that it could recover its fees under § 503(b): "By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements."  *In re Milwaukee Engraving Co., Inc.*, 219 F.3d 635, 636 (7th Cir. 2000).

The Second Circuit and Third Circuit have adopted the same interpretation. *In re Keren Ltd. P'ship*, 189 F.3d 86, 88 (2d Cir. 1999) ("…a broker or other professional generally may not avoid the requirements of Sections 327 and 330 by seeking administrative expense allowance under Section 503(b)(1)(A) rather than Section 503(b)(2)."); *In re F/S Airlease II, Inc. v. Simon,*

844 F.2d 99, 109 (3d Cir. 1988) ("If [a broker] were able to be compensated under Section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval [for the retention of professionals].").

A bankruptcy appellate panel in the tenth circuit reached the same conclusion. *In re Albrecht*, 245 B.R. 666, 672 (B.A.P. 10th Cir. 2000) ("A professional failing to comply with the requirements of the Code or Bankruptcy Rules may forfeit the right to compensation.... The services ... should be performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering such services may be considered an officious intermeddler or a gratuitous volunteer.") (quoting 3 *Collier on Bankruptcy* ¶ 327.03[2][b], at 327–17 (Lawrence P. King ed., 15th ed. rev. 1999) (footnote omitted).

Schwartz attempts to differentiate the current case by pointing out that the examiner and his professionals' employment was approved under section 327.  However, the examiner and his professionals were not approved to perform the services related to the disallowed fees.  The disallowed fees were for services that were outside the scope of the Order approving their employment.

Finally, the Court denies Schwartz's request to retroactively expand the examiner and his counsel's powers pursuant to Bankruptcy Rule 9006(b)(1). (ECF No. 325 at 10).  Schwartz cites to *In re Singson* to support its argument that its "excusable neglect" warrants retroactive approval of the services it performed outside the scope of an examiner's duties.  *See Matter of Singson*, 41 F.3d 316 (7th Cir. 1994).

It is questionable whether this Court has the authority to retroactively expand the scope of a professional's powers in order to approve that professional's compensation for work that was

performed outside the scope of the original retention order.  The Court is unaware of any bankruptcy case in the Fifth Circuit to exercise such authority.  Because Schwartz has failed to establish excusable neglect in this case, the Court need not determine whether the Court has the authority to enter such relief.

### Fees Defending Fee Applications

Schwartz and Baker Donelson have incurred substantial fees in defending their final fee applications.  At the August 7, 2014 hearing, the Court indicated that these defense costs were disallowed under the recent Fifth Circuit decision in *In re Asarco*, in which the Fifth Circuit held that defense costs are not recoverable in the absence of other factors such as bad faith.  Because the applicants failed to establish that the fee applications were filed in bad faith, the Court refused to allow the Examiner and Baker Donelson to present any evidence on fees incurred for defending their final fee applications.  Nonetheless, Schwartz and Baker Donelson have filed supplements to their final fee applications after discovering that the appellants in *Asarco* have filed a petition for certiorari to the U.S. Supreme Court. *In re Asarco*, *LLC* 751 F.3d 291 (5th Cir. 2014), *petition for cert. filed*, (U.S. July 29, 2014).   Since then, the U.S. Supreme Court has granted the petition for writ of certiorari.  *Baker Botts, L.L.P. v. ASARCO, L.L.C.*, 135 S. Ct. 44, 189 L. Ed. 2d 897 (2014).   However, because the U.S. Supreme Court has not yet made a decision, the Fifth Circuit's holding in *In re Asarco* remains effective.  Accordingly, Schwartz and Baker Donelson's fees incurred for defending their fee applications are disallowed.

### Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **February 27, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE